IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OAKLEY, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 20-cv-00329 |

## COMPLAINT

Plaintiff Oakley, Inc. ("Oakley" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq*., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, ecommerce Internet stores operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating ecommerce Internet stores that target United States consumers using one or more Seller Aliases, offer shipping to the United

States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products featuring Oakley's patented design to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Oakley substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Oakley to combat ecommerce Internet store operators who trade upon Oakley's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, namely the sunglasses shown in **Exhibit 1**, that infringe Oakley's patented design, U.S. Patent No. D659,180 (the "Infringing Products"). Ecommerce Internet stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Oakley has filed this action to combat Defendants' infringement of its patented design. Oakley has been and continues to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented design as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff Oakley**

4. Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

5. Oakley is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A.

6. Oakley is an internationally recognized manufacturer, distributor and retailer of eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise (collectively, the "Oakley Products"). Oakley Products have become enormously popular and even iconic, driven by Oakley's arduous quality standards and innovative design. Among the purchasing public, genuine Oakley Products are instantly recognizable as such. In the United States and around the world, the Oakley brand has come to symbolize high quality, and Oakley Products are among the most recognizable eyewear, apparel, footwear, outerwear, jackets and accessories in the world.

7. Oakley Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the official Oakley.com website which was launched in 1995, and Oakley O Stores, including one located at 835 N. Michigan Avenue in Chicago, Illinois.

8. Oakley Products are known for their distinctive patented designs. These designs are broadly recognized by consumers. Eyewear fashioned after these designs are associated with the quality and innovation that the public has come to expect from Oakley Products. Oakley uses these designs in connection with its Oakley Products, including, but not limited to, the following patented design, herein referred to as the "Oakley Design."

| Patent Number | Claim | Issue Date |
|---|---|---|
| D659,180 | | May 8, 2012 |

9. Oakley is the lawful assignee of all right, title, and interest in and to the Oakley Design. The patent for the Oakley Design was lawfully issued on May 8, 2012 with named inventor Hans Moritz. Attached hereto as **Exhibit 2** is a true and correct copy of the United States Patent for the Oakley Design.

**The Defendants**

10. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the ecommerce Internet stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Oakley. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

11. On information and belief, Defendants either individually or jointly, operate one or more ecommerce Internet stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Oakley to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Oakley will take appropriate steps to amend the Complaint.

12. In recent years, Oakley has identified hundreds of fully interactive, ecommerce Internet stores selling infringing products on online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the ecommerce Internet stores operating under the Seller Aliases. The ecommerce Internet stores operating under the Seller Aliases are offering for sale and selling Infringing Products to consumers in this Judicial District and throughout the United States. Ecommerce sales, including through ecommerce Internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 3**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed

to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Legislation was recently introduced in the U.S. Senate that would allow CBP to seize articles that infringe design patents, thus closing a loophole currently exploited by counterfeiters.[1] Infringing and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

13. Marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, NW. J. INT'L L. & BUS. (forthcoming 2020), at 24. Further, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products]." **Exhibit 4** at 25.

14. Defendants have targeted sales to Illinois residents by setting up and operating ecommerce Internet stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Infringing Products to residents of Illinois.

15. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing ecommerce Internet stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Ecommerce Internet

---

[1] *See* Press Release, U.S. Senator Tom Tillis, *Tillis, Coons, Cassidy & Hirono Introduce Bipartisan Legislation to Seize Counterfeit Products and Protect American Consumers and Businesses* (Dec. 5, 2019), https://www.tillis.senate.gov/2019/12/tillis-coons-cassidy-hirono-introduce-bipartisan-legislation-to-seize-counterfeit-products-and-protect-american-consumers-and-businesses.

stores operating under Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. Ecommerce Internet stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Oakley has not licensed or authorized Defendants to use the Oakley Design, and none of the Defendants are authorized retailers of genuine Oakley Products.

16. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based ecommerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent one from learning their true identities and the scope of their ecommerce operation.

17. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their operation, and to avoid being shut down.

18. Even though Defendants operate under multiple fictitious aliases, the ecommerce Internet stores operating under the Seller Aliases share unique identifiers, such as design elements, similarities of the price, description of the goods offered for sale, and of the Infringing Products themselves offered for sale. For example, ecommerce Internet stores at the Seller Aliases include notable common features, including use of the same accepted payment methods, check-out methods, meta data, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, and the use of the same text and images. Additionally, Infringing Products for sale by the Seller Aliases bear

similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that Defendants are interrelated.

19. On information and belief, Defendants use templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.

20. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

21. Further, infringers such as Defendants typically operate multiple payment accounts so that they can continue operation in spite of Oakley's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Oakley. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S.-based PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

22. On information and belief, Defendants are an interrelated group of individuals working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products infringing the Oakley Design in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Oakley, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into

the United States for subsequent resale or use products that infringe directly and/or indirectly the Oakley Design. Each ecommerce Internet store operating under the Seller Aliases offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Infringing Products into the United States and Illinois over the Internet.

23. Defendants' infringement of the Oakley Design in the offering to sell, selling, or importing of the Infringing Products was willful.

24. Defendants' infringement of the Oakley Design in connection with the offering to sell, selling, or importing of the Infringing Products, including the offering for sale and sale of Infringing Products into Illinois, is irreparably harming Oakley.

## COUNT I
## INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D659,180
### (35 U.S.C. § 271)

25. Oakley hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

26. Defendants offer for sale, sell, and/or import into the United States for subsequent resale or use Infringing Products that infringe directly and/or indirectly the ornamental design claimed in the Oakley Design.

27. Defendants have infringed the Oakley Design through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Oakley to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Oakley is entitled to injunctive relief pursuant to 35 U.S.C. § 283.

28. Oakley is entitled to recover damages adequate to compensate for the infringement, including Defendants' profits pursuant to 35 U.S.C. § 289. Oakley is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284.

**PRAYER FOR RELIEF**

WHEREFORE, Oakley prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. offering for sale, selling, and importing any products not authorized by Oakley and that include any reproduction, copy or colorable imitation of the design claimed in the Oakley Design;

    b. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the Oakley Design; and

    c. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

2) Entry of an Order that, upon Oakley's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods that infringe the Oakley Design;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing goods using the Oakley Design; and

   c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

3) That Oakley be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Oakley for infringement of the Oakley Design, and all of the profits realized by Defendants, or others acting in concert or participation with Defendants, from Defendants' unauthorized use and infringement of the Oakley Design;

4) That Oakley be awarded from Defendants, as a result of Defendants' use and infringement of the Oakley Design, three times Oakley's damages therefrom and three times Defendants' profits therefrom, after an accounting, pursuant to 35 USC § 284;

5) That Oakley be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 16th day of January 2020.   Respectfully submitted,

                                              /s/ Justin R. Gaudio
Amy Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiff Oakley, Inc.*

12